Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1594 | **DATE** | 8/23/2004 |
| **CASE TITLE** | TONY CAVALIERO vs. FIRST USA BANK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| DW | courtroom deputy's initials | 2004 AUG 23 PM 6:19 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY CAVALIERO,

    Plaintiff,

v().

FIRST USA BANK,

    Defendant.

No. 01 C 1594
Judge James B. Zagel



MEMORANDUM OPINION AND ORDER

## I. Factual Background

Plaintiff Tony Cavaliero began his employment with Defendant First USA in 1988. At the time, First USA was known as FCC National Bank and issued credit cards for First Chicago Corporation under the trade name First Card. In 1999, after a series of corporate mergers, First Card became known as First USA Bank. Throughout his employment with First USA, Plaintiff worked in the human resources department in Elgin, Illinois. After several promotions and job changes, Plaintiff became a senior human resources consultant and business partner in 1998. Plaintiff held this position until his active employment ended in October, 2000. At the time his position was eliminated, Plaintiff was 46 years old. From May, 2000 until the time of Plaintiff's employment termination, Todd Stevenson was the human resources manager for Defendant to whom Plaintiff reported.

In the fall of 2000, Defendant decided to reduce the size of its human resources staff. Defendant ordered Stevenson to pare his staff down to a level where the ratio of employees to human resources professionals was 450 to 1. At this time, the Elgin employee population was approximately 1800, which meant that the department could retain a total of four employees,

including Stevenson. At the time, the department consisted of six business partners who reported to Stevenson: the Plaintiff, Sandra Rosa, Blanca Sandoval, Marsha Rohner, Rhodora Markazi, Rhonda Zaccone and two administrative assistants: Doris Gallant and Heidi Coup Alvarez.

In order to meet the Defendant's mandate, Stevenson decided to eliminate the position of the department's administrative assistant, Doris Gallant, and to eliminate three of the six business partner positions. Stevenson terminated Rhonda Zaccone's employment because she wanted to work part-time. Of the remaining five business partners, Stevenson chose to terminate the employment of Plaintiff, age 46, and Rhodora Markazi, age 39. Stevenson selected Sandra Rosa, age 26, Blanca Sandoval, age 29, and Marsha Rohner, age 52, to staff the remaining positions in the human resources department.

The Defendant maintains guidelines, which describes its reduction in workforce policy. The policy states in relevant part:

> Q: Where there is a need to select among employees, what selection criteria will be used?
> A: ... In other situations, it may be necessary to select among employees impacted by workforce reduction. In those situations, the goal is to staff the remaining positions with the employees who best fit the needs and requirements of the organization; thus, employee selection will be based primarily on the skills/qualifications associated with the remaining positions.
> After analyzing the job content of the remaining (and perhaps changed) jobs, management and human resources for the involved area may develop a list of skills and qualifications needed by incumbents for those positions. Having done this, the skills and qualification of affected employees would then be reviewed against the skills/qualifications required for the remaining jobs. If appropriate specific skills or competencies can be weighted to indicate relative importance. Employees existing skills can then be ranked using those weightings. In some cases, it may be appropriate to rank employees using a management or decision-making team approach.
> Where there is no difference among employees' skills/qualifications, years of service will become the differentiating factor with the longer service employee chosen to fill the job. ...

Def.'s Appendix in Support of Def.'s Motion for Summary Judgment, Exhibit 2A at ¶ 14.

In his Complaint, Plaintiff alleges that Defendant engaged in policies and practices that resulted in unlawful employment discrimination against employees over the age of forty, as exemplified by his October, 2000, termination. Defendant claims that Plaintiff's employment

2

was terminated because the Defendant decided to reduce its human resources staff and legitimately determined that other human resources personnel were better suited than Plaintiff for the remaining positions.

## II. Analysis

Defendant now moves for summary judgment, contending that Plaintiff has no evidence, either direct or indirect, that his employment was terminated because of his age. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one which, under applicable law, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. When reviewing the record on summary judgment, I must draw all reasonable inferences in the light most favorable to the nonmovant. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 400 (7th Cir. 1992). To avoid summary judgment, however, Plaintiff cannot rest on the pleadings alone, but must present specific facts showing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If no reasonable jury could find for the party opposing the motion, it must be granted. *Mills v. First Fed. S & L Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996).

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of his age. 29 USC § 623(a). To defeat a motion for summary judgment, an ADEA plaintiff must present sufficient evidence to raise an inference that he was intentionally discriminated against because

3

of his age. *See* 29 USC § 623(a)(1); *Mills*, 83 F.3d at 840. A plaintiff may prove age discrimination by presenting direct or circumstantial evidence that age was a determining factor in his termination, or by establishing a *prima facie* case for discrimination under the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Id.* Whether a plaintiff proceeds under the direct or indirect method of proof, the standard is the same: the plaintiff must demonstrate that the employer would not have terminated his position but for his or her age. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). As a general rule, courts are reluctant to grant summary judgment in discrimination cases because the material issue involves the weighing of conflicting indications of motive or intent, which is "both sensitive and difficult." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). But, the Seventh Circuit has found that summary judgment is proper where the record indicates that the plaintiff was discharged pursuant to a corporate reorganization or a reduction in the workforce. *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845 (7th Cir. 1992); *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216 (7th Cir. 1991).

Plaintiff argues that there is sufficient evidence to prove age discrimination under both the direct and indirect methods. To prevail under the direct method, Plaintiff must present direct or circumstantial evidence that age was a determining factor in his discharge. In this case, Plaintiff concedes that he has no direct evidence of discrimination but argues that he can present sufficient circumstantial evidence to construct "a 'convincing mosaic' of circumstantial evidence" from which a reasonable jury could infer intentional discrimination by the decision maker. *Cerutti*, 349 F.3d at 1061.

Plaintiff argues that his circumstantial evidence includes (1) the characterization of his

4

work by managers and employees, including Faye Dadzie's statement that his work was "far and away superior to Sandoval and Rosa," (2) evidence of a merger in 1999, (3) evidence that, following the merger, a dramatic company culture change occurred where older employees were being forced out as indicated by the exclusion of older employees from meetings, the replacement of managers over 40 by significantly younger managers, and rumors and conversations focused on the lack of job security for anyone over 40, and (4) evidence that, within the year of change, Plaintiff reported to three different managers where his complaints regarding poor evaluations were ignored and his terminating manager purposefully excluded employees under the age of 40 from termination, proffered inconsistent reasons for Plaintiff's termination, and failed to follow company policy in implementing a reduction in force by not considering experience and qualifications in the reduction in force decision making analysis.

Within this list, there are three distinct areas of circumstantial evidence argued by Plaintiff. The first concerns Plaintiff's argument that his employment abilities greatly exceeded those of his peers. In examining the evidence presented by Plaintiff, I find that his former supervisor's (Dadzie, Janis and Luedemann) testimonies regarding Plaintiff's employment capabilities are irrelevant since they left prior to Stevenson's tenure as Plaintiff's manager. It is entirely possible that Plaintiff's work dropped off relative to the performance of his peers either prior to or during Stevenson's tenure. This possibility is supported by the evaluation reports of Roberta Kappler, Plaintiff's manager from June 1999 through May 2000. Kappler's reports indicated that Plaintiff needed to (1) do better at embracing and facilitating change in First USA's policies and procedures that occurred following the merger (noting examples of Plaintiff's vocal resistance to change in policies and procedures), (2) become more self-sufficient

and efficient by utilizing technology, software, and electronic databases available to him (noting that Plaintiff had ample training but was not fully utilizing the technology skills he was taught), and (3) become "less reliant" on administrative support. As part of this report, Kappler rated Plaintiff as "consistent," a mark lower than the "outstanding" given to Rosa and Sandoval. In choosing Plaintiff for reduction in force, Stevenson found that Plaintiff was especially weak in his technical skills and his ability to be self-sufficient without administrative support, that he had limited computer skills and was very dependent on administrative assistance, and that he had been resistant to undertaking projects. The similarities between Stevenson's reasons for dismissal and Kappler's review of Plaintiff's deficiencies support Stevenson's conclusion that Plaintiff's abilities did not greatly exceed those of his peers at the time of his termination.

The second area of circumstantial evidence is based on Plaintiff's argument that evidence exists regarding the dramatic company culture change following the 1999 merger. Plaintiff characterizes this culture change as one in which employees over 40 felt unwelcome, excluded, and were ultimately terminated and replaced by younger managers and employees. Plaintiff's argument is supported by his own testimony and the testimony of other over-40 former employees, including Janis, Luedemann, Scott and Dadzie. In a previous decision, the Seventh Circuit held that testimony regarding an age-discriminatory "culture" is too vague and speculative to establish discrimination. *See Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 360 (7th Cir. 2001). Although this case may be distinguished from *Kadas*, as more than one witness testified to the existence of an age-discriminatory culture and several of the witnesses were disinterested commentators, I find that the testimony offered by the deponents on the Defendant's corporate "culture" is, by its own nature, too vague and speculative to establish direct evidence of

discrimination. In particular, testimony regarding after-hour, non-compulsory, social gatherings by company employees and testimony regarding overall "feelings" of exclusion are too vague to support a direct claim of discrimination. Additionally, any comments made by Plaintiff regarding the company culture change are inapplicable, as an interested party's comments regarding the vague issue of company culture has little probative value. *See Kadas*, 255 F.3d at 360.

Finally, as evidence of the culture, Plaintiff submits a chart that lists 14 instances in which Defendant replaced older managers with younger managers. With respect to this chart, I agree with Defendant's characterization of Plaintiff's evidence as "cherry-picking" since the evidence lacks context. In fact, the chart lists only 14 of 35 individuals whose information was requested by Plaintiff during discovery. Plaintiff does not indicate how he generated the original discovery request for the 35 individuals or how he chose the 14 listed in the chart presented to this court. As a result, the chart cannot be seen to indicate a pattern of age discrimination.

The third area of circumstantial evidence is based on Plaintiff's argument that Stevenson ignored Defendant's policy in implementing staff reductions by failing to take into account Plaintiff's experience and qualifications and that Stevenson chose to purposefully exclude under 40-employees from the scope of his reduction. In responding to Plaintiff's arguments, I first find that Stevenson did not ignore Defendant's policy, which requires consideration of experience and qualifications in a reduction in force analysis, as experience and qualifications were explicitly included in Stevenson's ratings spreadsheet three specific times (Competency #1, Competency #6 and Competency #7). Additionally, I find that Stevenson did not purposefully exclude under-40 employees from the scope of his reduction since Stevenson selected 39-year old Rhodora

7

Markazi to be eliminated with Plaintiff, and retained 52-year old Marsha Rohner.

Plaintiff also claims that Stevenson's proffered reason for terminating his employment is contradicted by the deposition testimony of another one of Defendant's employees, Karen Johnson. Stevenson testified that he created a ratings spreadsheet comparing the skills of his current employees in 16 different areas, with each of the areas weighted in proportion with Stevenson's beliefs as to the future needs of the company. Defendant claims that Stevenson's testimony is contradicted by Johnson's testimony, the text of which follows:

> A: And as it says here it was Todd's responsibility to look at the skills and qualifications that would be needed in the job going forward and compare them to the individuals who were being considered, or pool of individuals that were existing in the HR business partner role.
> Q: And did you make a determination of whether or not Todd Stephenson had done this?
> A: Yes, he had done that.
> Q: How did you know if he had done that/
> A: Well, he had provided me with the information on how he did that as part of this investigation.
> Q: What did he provide you?
> A: He provided me with a document that he created - that I had asked him to provide me to - that he created for this investigation. Under the advise of counsel.
> Q: So he created the document as a result of your asking him to do so -
> A: To do so in writing.
> Q: -- in connection with this -
> A: Yes.
> Q: -- in connection with this investigation?
> A: Yes.
> Q: So any document that you got was specifically a result of being asked to respond to the charge?
> A: Correct.
> . . .
> Q: What was that [the document Stevenson gave to Johnson] kind of a spreadsheet type document that Todd Stephenson had prepared for you?
> A: No. As I recall it was just a listing of the individuals and their skills and qualifications.
> . . .
> Q: And what were the - and so what did this report that Todd Stephenson completed for you at your request, what did it note? What did it show you that you used in making any conclusions that you made in your investigation that you told me was that you were convinced that Tony's termination was not age based?
> A: It basically broke down the various skills and qualifications that the individuals had, including Tony Cavaliero. And, you know, the - and where there were some discrepancies in what were needed in going forward.

Dep. of Karen Johnson, at 58-61.

Plaintiff claims that Johnson's testimony establishes that the document on which Stevenson claims to have based his termination decisions was not created until after his termination. Following my analysis of the deposition testimony, I find that Plaintiff has failed to provide any evidence to substantiate that claim. Johnson's testimony explicitly states that the document provided to her was not a spreadsheet. Instead, the document was one in which Stevenson articulated how he compared the employees in making his decision. It is important to note that Johnson did not request Stevenson to forward any documents that he used in making his termination decisions. Rather, she asked him to prepare and provide a document for her articulating his reasons for the decisions, which Stevenson did in a non-spreadsheet format. Therefore, in no way does Johnson's testimony contradict the unimpeached testimony of Stevenson that he based his termination decisions on a ratings spreadsheet in which he scored each of his employees in 16 different areas with each of the areas weighted in proportion with Stevenson's beliefs as to the future needs of the company. Based on the testimony of Johnson regarding the substantive text of the document she received, it appears that Stevenson simply articulated the results of the spreadsheet analysis in a more reader friendly document for Johnson's investigation. This conclusion is strengthened by Johnson's unimpeached affidavit in which Johnson clarifies the testimony of her deposition and states:

> 4. . . . On pages 58 and 59 of the [deposition] transcript, I refer in my testimony to a document created by Todd Stevenson to help me in my investigation. The document I referenced is the attached Exhibit A [redacted].
> 5. It is my understanding that Mr. Stevenson had previously drafted and utilized another document to assist him in making his decision to eliminate the positions of Mr. Cavaliero and several other human resources professionals. This document is attached hereto as Exhibit B. The document attached as Exhibit B is not the document I was referencing in my deposition at pages 58 to 59 of the transcript.

Aff. of Karen Johnson, at ¶ 4, 5. On the basis of the evidence described above, I find that

Johnson's testimony does not contradict Stevenson's assertion that he based his termination decisions on the ratings spreadsheet he created prior to Plaintiff's termination, and as such, does not offer circumstantial evidence of age discrimination. Based on the above analysis, I find that Plaintiff's arguments are either unsubstantiated by the evidence actually presented in this case or insufficient as a matter of law, and as a result, I conclude that Plaintiff's evidence does not meet the standard required by *Cerutti* to prove discrimination under the direct method.

Under the indirect burden-shifting method articulated in *McDonnell Douglas,* in the context of reduction of force, to make a *prima facie* showing of age discrimination the plaintiff must establish that: (1) he is a member of the protected class, (2) he was performing his job to his employer's satisfaction, (3) his position was eliminated, and (4) someone much younger than him is now doing the work he was doing. *Thorn v. Sundstrand Aero. Corp.*, 207 F.3d 383, 386 (7th Cir. 2000); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999). Following a *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *See Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 445 (7th Cir. 1997); *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). If the defendant is able to present a legitimate, non-discriminatory basis for the termination, the burden shifts back to the plaintiff to establish that the proffered reason is merely a pretext for discrimination. *See Mills*, 83 F.3d at 843.

For the purposes of this motion, Defendant has conceded that Plaintiff can make a *prima facie* showing of age discrimination. However, Defendant asks this court to find that it has provided a legitimate, non-discriminatory basis for Plaintiff's termination. Defendant claims that Plaintiff's position was terminated because he was the second lowest performing employee in the human resources group. According to the spreadsheet analysis, Plaintiff rated fourth out of the

five full-time business partners, with a score of 3.0, compared to Rosa, Sandoval and Rohner who scored 3.925, 3.8, and 3.475, respectively. Since lower performance is a legitimate, non-discriminatory basis for firing Plaintiff, the burden shifts back to Plaintiff to establish that Defendant's proffered reason is merely a pretext for discrimination.

To establish pretext, Plaintiff must provide evidence that calls into question the truthfulness of Defendant's alleged legitimate, non-discriminatory basis for Plaintiff's termination. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). Plaintiff claims that the depositions of Johnson and Stevenson bring into question the truthfulness of Defendant's reasoning because they provide conflicting information regarding whether Stevenson created his spreadsheet prior to the actual decision to terminate Plaintiff's employment. For the same reasons as articulated above, I do not find that Defendant's legitimate, non-discriminatory basis is brought into question by Johnson's testimony. A review of the testimony and Johnson's subsequent affidavit demonstrates that there has been no evidence produced by Plaintiff to contradict Stevenson's testimony that he relied on the ratings in his spreadsheet when he decided to terminate Plaintiff's employment. Additionally, Plaintiff argues that I should not grant summary judgment because Stevenson failed to follow company policy by not considering qualifications or experience in his ratings spreadsheet. Again, for the reasons stated above on this issue, I find that Plaintiff's claim is incorrect, as Defendant did consider qualifications and experience in his decision to terminate Plaintiff.

Next, Plaintiff argues that pretext may be demonstrated because Defendant indicated that Plaintiff was discharged because his skills in reorganization were unimportant, yet those skills were expressly mentioned as being valued with reference to retaining employees. Plaintiff is correct in stating that those skills were in fact valued, albeit not as greatly as other skills, in

11

Stevenson's ratings spreadsheet. But, even with Plaintiff's strong performance in this area (Plaintiff received a "4" on a 5-point scale, which matched the highest score in this area), he still did not rate within the top 3 business partners in the human resources department.

Third, Plaintiff argues that pretext may be established if a court thinks that the employer misjudged the qualifications of the employees. Plaintiff is correct in this assertion, but the standard of proof to demonstrate pretext based on evidence of qualifications is extremely high. "Where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate[s], evidence of [other employee's] competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002). "In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 1180-81. In applying this standard, a court is not allowed to second guess an employer's business judgments. *See Id.* at 1181. A court must respect the employer's "unfettered discretion" to choose among qualified candidates, as comparative qualifications do not, by themselves, support a finding of pretext. *Id.* at 1181-82. In using the standard of proof required by the Seventh Circuit in *Millbrook*, I do not find that Plaintiff has made a sufficient showing of pretext through evidence of disparate qualifications. In this case, there are several analyses, including Stevenson's and Kappler's reviews, which suggest that Plaintiff's qualifications were in fact lesser than those of his fellow business partners. Moreover, Plaintiff

failed to prove that his qualifications are so superior that no reasonable person could have chosen the selected candidate over the plaintiff for the job in question.

Finally, citing *Schuster v. Lucent Techs.*, 327 F.3d 569, 574 (7th Cir. 2003), Plaintiff argues that he need not establish that his employer did not honestly believe the reasons it gave for firing him, so long as he can establish that an improper motive tipped the balance in favor of discharge. Plaintiff claims that the deposition testimonies of several former and current co-workers provide sufficient evidence of improper motive by Defendant, (in the form of bias against those over 40) tipping the balance in favor of discharge. For the following reasons, I find that Plaintiff has failed to offer sufficient proof of an improper motive, and as such, the evidence is not sufficient to support a finding of pretext. First, as previously stated above, the testimonies of several former and current co-workers, regarding the company culture, are insufficient as a matter of law to prove discriminatory motive primarily because the comments are vague and speculative. Second, in the same reduction in force in which Defendant fired Plaintiff, Defendant also fired Markazi, an under-40 year old business partner, and retained Rohner, a 52 year old business partner. The fact that Defendant retained an employee that is even older than Plaintiff, and fired an employee outside of the Plaintiff's protected class provides ample support for the conclusion that Defendant did not use an improper motive of age to tip the balance in favor of discharge. Accordingly, I find that Plaintiff has failed to prove a case of age discrimination under the burden shifting method of *McDonnell Douglas Corp.* sufficient to withstand summary judgment.

For the reasons stated herein, the Defendant's Motion for Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: AUG 2 3 2004